# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LEON ANDERSON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )   No. 3:19-cv-00647 |
| | )   **JUDGE TRAUGER** |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Respondent | ) |

## MEMORANDUM OPINION

The petitioner pleaded guilty on April 4, 2018, to one count of conspiracy to distribute and possess with intent to distribute heroin and fentanyl resulting in death, and one count of knowingly and intentionally distributing and possessing with intent to distribute a mixture or substance containing heroin and fentanyl resulting in death, both in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Case No. 3:17-cr-132 at ECF No. 111.) Pursuant to his plea agreement, the court sentenced the petitioner to the mandatory minimum 240 months on each count, to run concurrently, and entered judgment on July 16, 2018. (*Id.* at ECF No. 163.) He has now filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. No. 1.) He certifies that he placed his motion in the prison mailing system on July 13, 2019, and the government does not dispute its timeliness. (Doc. No. 1 at 13.)

After he filed his original Section 2255 motion and supporting memorandum, the petitioner filed a motion to supplement facts containing the proposed supplement (Doc. No. 8) and a motion to attach a declaration of facts in further support of his 2255 motion (Doc. No. 12). Although the petitioner failed to comply with the court's order to file an amended motion setting

forth all his allegations in a single document (Doc. No. 15), the court has ordered the government to consider the petitioner's supplemental filings as part of his motion (Doc. No. 22), and this court will do the same.

## I. LEGAL STANDARD

To be entitled to relief, a petitioner who moves to vacate or correct his sentence under Section 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the Court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The petitioner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of Section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a Section 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

When a defendant challenges the validity of a guilty plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Such

2

"[s]olemn declarations in open court carry a strong presumption of verity." *Id.* Subsequently-presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id.* (citations omitted).

## II. FACTS AND BACKGROUND

In his plea agreement, the petitioner admitted the following facts and admitted that they established his guilt under both counts beyond a reasonable doubt:

> Beginning not later than on or about March 21, 2017, and continuing to and including on or about March 23, 2017, in the Middle District of Tennessee and elsewhere, defendants, LEON ANDERSON, DAMION ANDERSON, a.k.a. "Frankie," and TATIANA JOHNSON did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, to distribute and possess with intent to distribute a mixture or substance containing a detectible amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, the use of which resulted in the death of Individual A, in violation of Title 21, United States Code, Sections 841(a)(1) and 84 1 (b)(1)(C), all in violation of Title 21, United States Code, Section 846.
>
> On or about March 22, 2017, in the Middle District of Tennessee, LEON ANDERSON, DAMION ANDERSON, a.k.a. "Frankie," and TATIANA JOHNSON, aided and abetted by each other, did knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectible amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, the use of which resulted in death of Individual A, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.
>
> On March 21, 2017, at approximately 5:48 p.m., an unknown individual sent Johnson a message that asked, "Hey anything good," to which Johnson responded that she would be "good" in 2 hours. Johnson meant "good" to mean that drugs were available. Two hours corresponds to a drive from Gallatin to Nashville and back.
>
> At the same time that Johnson sent the text, Leon Anderson was travelling on a Greyhound bus from Detroit to Nashville. At 5:52 p.m. Damion Anderson texted Leon Anderson and indicated that he was leaving to pick Leon Anderson up. Johnson drove Damion Anderson to Nashville to pick Leon Anderson up. Video received from the Greyhound bus terminal confirmed that at 6:40 p.m., Greyhound bus #1101 arrived in Nashville, Tennessee from Detroit, Michigan.

3

> Between 7:11 p.m. and 7:16 p.m., the videos show Leon Anderson retrieve a blue duffle bag from the bus, greet Damion Anderson, and hand Damion Anderson the blue bag. After Damion Anderson placed the bag in the trunk of a silver sedan, Johnson drove Damion and Leon Anderson back to Gallatin to Johnson's home. The bag contained a package containing a combination of Heroin and Fentanyl. Leon Anderson stored the heroin and fentanyl at Johnson's home.
>
> That same evening, March 21, 2017, at approximately 8:57 p.m., Johnson sent a text message to J.H. that said, "got h." J.H. replied he would probably contact Johnson the next day, and asked the price. Johnson confirmed it was $25 per 1/10 gram of heroin.
>
> On the evening of March 22, 2017, Individual A and J.H. texted Johnson seeking heroin. Johnson arranged for Individual A and J.H. to come to her home at 821 Lackey Circle, Gallatin, Tennessee to purchase four "points" (4/10 of a gram) of what they believed to be heroin for $100. At approximately 8:36 p.m., J.H. sent Johnson a text message in which he asked, "You want me to come to the door or are you bringing it out."
>
> At that point in the evening, both Leon Anderson and Damion Anderson were at Johnson's home. She directed them to go downstairs and give J.H. the drugs.
>
> After Individual A and J.H. purchased the controlled substances, they proceeded to consume it. [sic] Individual A had consumed other drugs during the course of the day, but they did not cause her to overdose. Sometime after 1:00 a.m., Individual A overdosed as a result of consuming the fentanyl and heroin. The fentanyl and heroin was the but-for cause of Individual A's death.
>
> On March 23, 2017, officers executed a state search warrant on Johnson's home. During the course of the search, Agents found two plastic bags containing what appeared to be heroin in the right shoe of a pair of blue Nike shoes, men's size 8, which testing confirmed contained heroin and fentanyl. The shoes were in a blue duffle bag located in the living room closet. The shoes belonged to Leon Anderson.

(Case No. 3:17-cr-132 at ECF No. 112, PageID# 267–69.)

The petitioner also acknowledged in his plea agreement that he was waiving all of his trial rights, which his attorney had explained to him, and that he was "in fact guilty of charges contained in Counts One and Two of the indictment." (*Id.* at PageID# 267.) He also waived all rights to appeal any issue bearing on his guilt and the right to bring any collateral attack on his sentence pursuant to Section 2255. (*Id.* at PageID# 272.) However, those waivers contained an exception for claims of involuntariness, prosecutorial misconduct, or ineffective assistance of

counsel. (*Id.*)

The court questioned the petitioner about his understanding of his plea at the plea hearing, while the petitioner was under oath. The following exchange took place with regard to the petitioner's actual guilt:

> THE COURT: You are proposing to plead guilty under a plea agreement with the government. Have you read both the petition to enter a plea of guilty and the plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You feel you understand both these documents?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: I want to go over your plea agreement with you at this time. You are agreeing to plead guilty to both of the charges in this indictment. In pleading guilty, you are agreeing that the facts on pages 4 through 6 of this plea agreement are true and that they establish your guilt beyond a reasonable doubt. Have you read those facts very carefully --
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: -- and are you prepared to admit that they are true? Are you prepared to admit that they are true?
>
> THE DEFENDANT: Yes, ma'am.

(Case No. 3:17-cr-132 at ECF No. 246, PageID# 842.) After the government's attorney recited the facts from the plea agreement, the petitioner confirmed that they were accurate and that the government could have proved the elements of both counts if he went to trial. (*Id.* at PageID# 850–51.) He stated that he was pleading guilty because he was, in fact, guilty of the charged offenses. (*Id.* at PageID# 851.) Although the petitioner denied knowing that the heroin he sold was laced with fentanyl, he acknowledged that he knew he was selling heroin, and agreed to the recitation of facts including the test results establishing that the drugs found in his shoe were heroin combined with fentanyl. (*Id.* at PageID# 848–49, 852.) The court also recited the waiver provisions and the limited exceptions to the waivers and confirmed that the petitioner understood

5

the agreement. (*Id.* at PageID# 844.)

In his plea petition, the petitioner acknowledged that he was represented by counsel Dumaka Shabazz, and that Mr. Shabazz had thoroughly advised him about the facts and law of his case:

> I have had sufficient opportunity to discuss with my lawyer the facts and surrounding circumstances concerning the matters mentioned in the indictment. My lawyer has counseled and advised with me as to the nature and cause of every accusation against me. We have thoroughly discussed the government's case against me and my potential defenses to the government's case. My lawyer has explained each element of the crime charged to me and what the government would offer to prove these elements beyond a reasonable doubt.

(Case No. 3:17-cr-132 at ECF No. 111, PageID# 258.) He expressly asserted that "[m]y lawyer has done all the investigation and research in this case that I have asked him to do, and has reviewed with me the discovery material provided by the government. I am satisfied with his representation at this point." (*Id.* at PageID# 261.) Under oath at the plea hearing, the petitioner again acknowledged that Mr. Shabazz had explained what the government would have to prove as well as any possible defenses, that he had done all the investigation the petitioner requested, and that the petitioner was satisfied with his representation. (Case No. 3:17-cr-132 at ECF No. 246, PageID# 839.)

Prior to the petitioner's guilty plea, the court had ordered, on the stipulation of the parties, that certain discovery provided by the government would be labeled "PROTECTED" for privacy purposes and that counsel was prohibited from allowing the petitioner to keep copies of any such discovery. (Case No. 3:17-cr-132 at ECF Nos. 49, 52, 53.) The autopsy and toxicology reports on the victim in this case were among the discovery documents labeled "PROTECTED," but the petitioner has nevertheless obtained copies of those documents and relies on them in support of his Section 2255 motion. (Doc. No. 2-1.) The laboratory report indicates that the victim's blood

6

contained buprenorphine, marijuana, cocaine metabolites, fentanyl, and morphine (a metabolite of heroin). (*Id.* at 10–14.) The county medical examiner determined the cause of death to be "[a]cute combined drug intoxication (cocaine and fentanyl)." (*Id.* at 3, 7.) The medical examiner's report also states that "[a]ccording to PD investigation the decedent left the house around 1-2 am this date to go get heroin. Decedent was found this morning deceased in her bed." (*Id.* at 7.) In a sworn affidavit, Mr. Shabazz has testified that he reviewed and discussed these documents with the petitioner in the Robertson County Detention Center, even though he was not authorized to leave copies of the protected documents with the petitioner. (Doc. No. 25-1.)

The petitioner alleges that defense counsel withheld those documents and the information they contained from him prior to the entry of the plea agreement. (Doc. No. 1 at 5.) He maintains that they establish his actual innocence of the crimes to which he pleaded guilty and that counsel was ineffective for advising him to plead guilty when these documents proved his innocence. (*Id.* at 4–5.) He also asserts that he is entitled to relief because, after the petitioner pleaded guilty, the court granted his co-defendant's motion to suppress the evidence found in Johnson's home.[1] (Doc. No. 8.)

### III. ANALYSIS

The government first asserts that the petitioner waived his right to bring this Section 2255 motion both expressly in his plea agreement and inherently in his guilty plea. (Doc. No. 25 at 6–7.) The government completely ignores the fact that the petitioner's plea agreement expressly reserved the right to bring a collateral challenge based on the ineffectiveness of counsel. And the petitioner's allegations about counsel's withholding material facts at least arguably goes to

---

[1] As discussed above, the petitioner pleaded guilty on April 4, 2018. The court granted Damion Anderson's motion to suppress on February 25, 2019. (Case No. 3:17-cr-132 at ECF No. 197.)

whether his plea was knowing and voluntary. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (holding that "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970))). The court therefore rejects the government's assertion of waiver.

A freestanding claim of actual innocence is not reviewable under Section 2255. *Avery v. United States*, No. 17-5473, 2017 WL 9248941, at *3 (6th Cir. Nov. 13, 2017) ("Avery presented a freestanding actual-innocence claim, which was subject to dismissal as not cognizable.") (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007)). Because the petitioner's challenge calls into question the knowing and voluntary nature of his plea, however, the court turns to the petitioner's claim that counsel was ineffective for advising him to plead guilty while withholding evidence that established his innocence.

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice,

8

under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Sixth Amendment right to counsel "extends to the plea-bargaining process," *Lafler v. Cooper*, 566 U.S. 156, 162 (2012), and the *Strickland* test applies to "challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). When a petitioner claims that "ineffective assistance led to the improvident acceptance of a guilty plea," the prejudice prong of *Strickland* requires him to "show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Lafler*, 566 U.S. at 163 (quoting *Hill*, 474 U.S. at 59). The Supreme Court has explained what a heavy burden a petitioner bears in such circumstances:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

When reviewing claims of ineffectiveness of counsel, the court is mindful that its scrutiny of defense counsel's performance is highly deferential. The petitioner's counsel is strongly presumed to have rendered adequate assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Strickland*, 466 U.S. at 689–90 ("strong presumption" that counsel's conduct falls within a wide range of reasonable professional assistance); *see Nix v. Whiteside*, 475 U.S. 157, 165 (1986).

9

At its core, the petitioner's motion rests on the claim that counsel advised him to plead guilty without sharing discovery materials that would have proved he was innocent. That claim fails for two reasons: (1) the petitioner cannot overcome the presumption and evidence that counsel reviewed the materials in question with him, and (2) the materials do not, in fact, establish the petitioner's innocence.

As discussed above, the court begins with a very strong presumption that the petitioner's appointed counsel performed his duties reasonably. Additionally, the record before the court includes a sworn affidavit from the petitioner's counsel that he reviewed and discussed the records on which the petitioner relies during a meeting in the Robertson County Detention Center. (Doc. No. 25-1 at 1–2.) Moreover, in a case that turned on whether the fentanyl-laced heroin that the petitioner admitted to selling resulted in the victim's death, it simply defies logic that the petitioner would not have discussed the victim's official cause of death with his counsel. That is especially true where the petitioner acknowledged in his plea agreement that the victim consumed other drugs during the day on which she bought drugs from the him but admitted that those drugs alone did not cause her death.

The petitioner's unsupported self-serving assertion that counsel failed to review key evidence with him is not sufficient to overcome the contrary presumption, logic, and evidence. In short, the record before this court refutes the petitioner's factual allegations on this point, "thus making an evidentiary hearing unnecessary." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (finding that district court was correct to deny evidentiary hearing where 2255 movant had "not identified any evidence, other than his own testimony, that he could present to support his claim" that counsel failed to inform him of a plea offer). The petitioner's ineffective-

10

assistance claim, therefore, fails on the first prong of *Strickland*, because counsel's performance was not objectively deficient.

Moreover, the evidence in question simply does not mean what the petitioner apparently thinks it does. Title 21 U.S.C. § 841(b)(1)(C) imposes a mandatory minimum 20-year prison sentence where "death or serious bodily injury results" from the use of controlled substances distributed by the defendant. In *Burrage v. United States*, the primary case on which the petitioner relies (Doc. No. 2 at 6), the Supreme Court interpreted that provision to mean that "where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death . . . a defendant cannot be liable for the penalty enhancement under § 841(b)(1)(C) unless such use is a but-for cause of the death[.]" 571 U.S. 204, 218–19 (2014). But under this standard, the government is not required to prove that the drugs sold by a defendant were "the *only* cause of death. On the contrary, but-for causation exists where a particular controlled substance, . . . 'combines with other factors'. . . to result in death." *United States v. Volkman*, 797 F.3d 377, 395 (6th Cir. 2015) (quoting *Burrage*, 571 U.S. at 211) (emphasis in original). Even where a death is "the result of the 'synergistic effect'" of multiple drugs, only one of which was supplied by the defendant, "this satisfies the standard under *Burrage*'s 'but-for' test." *United States v. Mascarella*, No. 16CR14-3, 2020 WL 1677496, at *2 (N.D. Ohio Apr. 6, 2020). "[W]here use of the controlled substance combines with other factors to produce death, and death would not have occurred without the incremental effect of the controlled substance, but-for causation exists." *United States v. Ewing*, 749 F. App'x 317, 327 (6th Cir. 2018) (citation and quotation marks omitted). Accordingly, the fact that the medical examiner determined the fentanyl in the product sold by the petitioner combined with cocaine from another source to cause the petitioner's death is consistent with the fentanyl's being a but-

11

for cause of death and with guilt under *Burrage*.

To the extent that the petitioner's various memoranda and supplements seem to assert that the evidence establishes that he never sold drugs to the victim, or that she never consumed the drugs he sold, that argument also fails. First, the petitioner is bound by his admission in his plea agreement and at his plea hearing that he did, in fact, sell the drugs and that the victim consumed them. Moreover, the petitioner is simply incorrect in his repeated assertions that the victim's toxicology report showed no sign of heroin use. The victim's blood tested positive for morphine, which is a known metabolite of heroin. *Burrage*, 571 U.S. at 207; *United States v. Seals*, 915 F.3d 1203, 1205 (8th Cir.), *cert. denied*, 140 S. Ct. 259, 205 L. Ed. 2d 149 (2019); *United States v. Allen*, No. CR 5:15-113-DCR, 2020 WL 1623988, at *3 (E.D. Ky. Apr. 2, 2020). Because heroin metabolizes so quickly after use, "it is not uncommon to find only morphine in a subsequent blood test." *Seals*, 915 F.3d at 1205; *see also Mendez v. Swain*, No. EDCV18922RGKSP, 2019 WL 4740539, at *7 (C.D. Cal. Aug. 22, 2019), report and recommendation adopted, No. EDCV18922RGKSP, 2019 WL 4735423 (C.D. Cal. Sept. 27, 2019) ("[H]ere there was only the morphine found in the blood, which is a metabolite of the heroin.").

Thus, the records on which the petitioner relies would not have precluded a finding that the fentanyl he acknowledges having sold provided the incremental effect that caused the victim's death. The possibility that a defendant might be able to offer conflicting testimony about whether drugs he sold were definitively a but-for cause of the victim's death does not make counsel's advice to plead guilty ineffective. *United States v. Noble*, No. 1:14-CR-135, 2017 WL 626130, at *7 (N.D. Ohio Feb. 15, 2017) (rejecting ineffective-assistance claim where

12

movant pleaded guilty despite statement from expert that cause of death could not be determined to a medical certainty on available evidence). Nor does it render such a guilty plea manifestly unjust.

Finally, the fact that a co-defendant later succeeded in having certain evidence suppressed does not have any bearing on the validity of the petitioner's plea. The right to challenge the evidence against him is one of the many rights the petitioner knowingly waived when he decided to plead guilty and admit that he sold drugs that the victim consumed before her death. Moreover, counsel's sworn affidavit states that "Mr. Anderson decided not to pursue a motion to suppress," and that his co-defendant's later motion was successful because of evidence that had not been provided by the government at the time the petitioner made that choice. (Doc. No. 25-1 at 2.)

The petitioner is not entitled to relief on his Section 2255 motion.

## IV. PENDING MOTIONS

The petitioner filed a motion for default judgment on April 23, 2020, five days before the government's response was due. (Doc. No. 23.) That motion will be denied as factually and legally unfounded.

The petitioner has also filed a document styled "Petitioner's Declaration In Response to Court Order Dated April 7, 2020." (Doc. No. 24.) This document once again evidences the petitioner's confusion about the court's handling of his multiple memoranda and supplements in support of his 2255 motion. As discussed above, the court originally granted the petitioner's motions to supplement and declare additional facts and, despite the fact that both motions already contained the proposed supplemental information, ordered the petitioner to file an

13

amended motion combining all of his allegations and arguments in a single document simply for clarity. (Doc. No. 15.) When the petitioner failed to comply with that order and filed additional documents that suggested he did not understand the order, the court repeated its instruction to the petitioner and sua sponte gave him an extension of time to comply. (Doc. No. 21 at 2.) When almost two more months passed and the petitioner still had not complied, the court finally ordered that any further amendments would not be permitted, but that the government must address the arguments raised in the petitioner's motions to supplement and declaration of facts. (Doc. No. 22.) The petitioner's pending motion emphasizes that he already mailed his supplement and declaration of facts and asks the court for additional time "to allow a timely filing of Petitioner's briefs." (Doc. No. 24 at 3.) To clarify once again: the court received the petitioner's motion to supplement and motion to attach declaration of facts in September 2019 and November 2019, respectively, and they have been considered in ruling on the petitioner's 2255 motion herein. To the extent the petitioner seeks to file yet more supplements to his motion, that request will be denied as untimely and moot.

## V. CONCLUSION

For the reasons set forth above, the petitioner is not entitled to relief under Section 2255. If a court denies a habeas petition, the court may issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see* 28 U.S.C. § 2253(c)(2). Although the petitioner is not required to prove the merits of his case for the court to issue a certificate of appealability, the petitioner must demonstrate "something more than the absence of

14

frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotation marks omitted). Because the petitioner has failed to make a substantial showing of a denial of a constitutional right, the court will deny a certificate of appealability. *See Castro v. United States*, 310 F.3d 900 (6th Cir. 2002) ("A petitioner is entitled to a COA only if he 'has made a substantial showing of the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2).").

An appropriate order shall enter.

_____
Aleta A. Trauger
United States District Judge